IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DR. GRAHAM SHEA, DDS,<br>*Plaintiff*<br><br>v.<br><br>MANAGEMENT AND TRAINING CORPORATION,<br>*Defendant* | §<br>§<br>§  A-18-CV-00830-SH<br>§<br>§<br>§<br>§<br>§ |

**O R D E R**

Before the Court are Defendant's Opposed Motion to Compel Plaintiff's Authorization to Release Information Regarding Prior Employment, filed April 3, 2020, and the associated response and reply briefs. Dkt. 31, 34, 35.

**I.   Background**

Plaintiff Graham Shea, DDS, worked as a dentist at a Job Corps center in San Marcos, Texas, operated by Defendant Management and Training Corp. ("MTC") from July 18, 2016, to January 13, 2017. In his Second Amended Complaint, Shea alleges that he was discharged as reprisal for disclosing contract violations and mismanagement, in violation of 41 U.S.C. § 4712(a)(1). Dkt. 19. Shea seeks compensatory damages, including back pay and front pay, and costs and expenses, including attorney and expert witness fees. MTC denies the allegations and contends that Shea "evidenced a continuing habit and pattern of absenteeism" during his employment. Dkt. 31 at 2.

In its Motion, MTC asks the Court to compel Shea's authorization of earnings and work history from his last two employers before MTC, which he left in 2013 and 2014, respectively, as well as "documentation from the Oregon State Employment Department[1] regarding Plaintiff's job efforts while receiving Oregon unemployment compensation." Dkt. 31 at 3. In response,

---

[1] Plaintiff lived and worked in Portland, Oregon, before moving to Texas in mid-2015. Dkt. 34 at 2, 9.

1

Shea contends that "prior employment records are wholly irrelevant to the core issue of the reasonableness of Shea's job search efforts *subsequent* to his wrongful termination from Defendant's employment." Dkt. 34 at 2.

## II. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides in part that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). Information within the scope of discovery need not be admissible in evidence to be discoverable. FED. R. CIV. P. 26(b)(1).

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). Once the party seeking discovery establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the resisting party to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *See Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003). "A trial court enjoys wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982).

With these standards in mind, the Court addresses MTC's requests.

### III. Analysis

Calculations of front pay "cannot be totally accurate because they are prospective and necessarily speculative in nature. The courts must employ intelligent guesswork to arrive at the best answer." *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991) (citations omitted). A court is not bound to a particular award for a set period of time, but should consider "the length of prior employment, the permanency of the position held, the nature of work, the age and physical condition of the employee," and "myriad" other factors that may be relevant to whether a front pay award is equitably required and, if so, for what period of time. *Id.* at 871.

Shea was 55 years old when MTC terminated his employment in 2017. Ex. 1, Dkt. 31-1 at 3. In support of his claim for damages, Shea has submitted an economist's expert report, which states that he "envisioned working Full time to at least 65 years of age." *Id.* at 6. The expert calculated the present value of Shea's back pay from termination through trial at $525,241.60, and his lost front pay for six years (through 2023) at $964,200.75. *Id.* at 9.

MTC argues that Shea's assertion that he intended to work until age 65 is not credible and identifies evidence calling into question whether he planned to do so, at least in the dental field. In his application for the job at MTC, Shea stated that he left Permanente Dental Associates, P.C., where he worked as a dentist from September 1, 1996, to December 31, 2013, for a "career change and education." Ex. 2, Dkt. 31-2 at 4. MTC also cites Shea's tax returns showing that he earned wages of only $2,155 in 2014 and, in 2015, $847 plus $8,070 in unemployment compensation and $1,128,962 in pensions and annuities. Exs. 7-8, Dkt. 31-9, 31-10. In addition, MTC emphasizes Shea's cover letter for a job application as a parts deliverer for AutoZone dated January 17, 2018, one year after Shea was terminated by MTC. In the letter, Shea stated that, while his "paid experience has been primarily clinical dental care for 27 years":

> I have decided to change my career, however. Though I wished to remain in the Dental/Biology field in teaching, research, and investigation, Clinical Dentistry, while financially rewarding, is no longer professionally or emotionally rewarding in the current medical practice model. I wish to delve into new fields…I want to learn to weld, fly, and play music in a cover band!

Ex. 6, Dkt. 31-6 at 6.[2]

The record shows that Shea has applied for dental positions since his termination by MTC. He argues that earlier records are irrelevant to his damages claims and to MTC's defense that he has failed to mitigate his damages: "Clearly, Shea has produced sufficient post-termination job search data to allow Defendant to attack the credibility of those efforts, and records from Shea's employment dating back to 1996 with Permanente Dental Associates will not assist in a jury's assessment of those efforts from 2017 forward." Dkt. 34 at 6.

Even if the information MTC seeks to discover concerning Shea's previous dental jobs is not relevant to mitigation, the Court finds that Shea's contention that he intended to work until age 65 is directly relevant to the amount of damages he seeks in the form of front pay. This evidence also is relevant to his request for "lost future earnings suffered in the form of a lifetime of diminished earnings resulting from reputational harm suffered as a direct and proximate result of MTC's wrongful termination." Dkt. 19 ¶ 30. Although Shea argues that the information MTC seeks is disproportional to the needs of this case, he does not contend that the discovery will cause him any harm, prejudice, or undue burden, and the Court finds that it will not.

On the specific facts of this case, the Court finds that MTC has established that some information from Shea's work history before his six months at MTC is relevant to his damages claims under Rule 26(b)(1), particularly his claims for front pay and reputational damages. *Cf., e.g.*, *Reed v. Madison Cty., Miss.*, No. 3:16-cv-51-WHB-JCG, 2016 WL 11640189, at *3

---

[2] The Court finds this letter relatively less persuasive than the other evidence MTC cites, given that Shea had been unemployed for a year when he wrote it.

(S.D. Miss. Nov. 1, 2016) (stating that a plaintiff in an employment discrimination case "does not open her entire work history up for discovery by the defendant as a matter of course; rather, the defendant must demonstrate a specific reason why the information is relevant to the particular claims and defense in the case at hand").

MTC seeks to compel Shea's consent to disclosure of the following information by Permanente Dental Associates:

a) job title;
b) dates of employment;
c) full time or part time status;
d) hours generally worked;
e) attendance/absences recorded each year of employment;
f) disciplinaries/ warnings/ write ups/ performance counselings;
g) number of direct reports;
h) ending salary/wages and paid benefits;
i) essential job duties and skills required;
j) eligibility for rehire if openings exist;
k) number of shares/units/percentage ownership/and/or dollar value of shares owned/accrued in the company upon exit from employment;
l) retirement/severance package earned/paid out upon exit from the company;
m) reason job ended.

Ex. 18, Dkt. 31-20. MTC seeks similar information from Portland Community College, where Shea worked as a clinical dental instructor in the fall of 2014:[3]

a) job title;
b) dates of employment;
c) full time or part time status;
d) temporary or permanent position;
e) hours generally worked;
f) attendance/absences recorded each year of employment;
g) all disciplinaries/ warnings/ write ups/ performance counselings;
h) number of direct reports;
i) ending salary/wages and paid benefits;

---

[3] The exact dates Shea worked at the college are inconsistent in the record. *See* Dkt. 31 at 4 n.2.

      j) essential job duties and skills required;
      k) eligibility for rehire if openings exist;
      m) reason job ended.

Ex. 19, Dkt. 31-21. Finally, MTC seeks authorization to obtain the following information from the Oregon Employment Department:

> a) complete application for unemployment benefits;
> b) copies of all decision(s) regarding benefits including any appeal documentation and decisions;
> c) all communications to and from Shea from his Job Placement Counselor;
> d) all job search documentation recorded for Shea or completed by Shea;
> e) all changes of address documented by Shea;
> f) documentation from the Oregon Employment Department which designates the job search requirements which must be met by recipients of unemployment compensation.

Ex. 20, Dkt. 31-22.

    The Court finds that the authorizations MTC seeks are overbroad in certain aspects. In particular, information and documentation concerning Shea's entire seventeen years with Permanente Dental Associates is not proportional to the needs of this case. *See, e.g.*, *Levitin v. Nationwide Mut. Ins. Co.*, No. 2:12-cv-34, 2012 WL 6552814, at *4 (S.D. Ohio Dec. 14, 2012) (limiting discovery from former employers to ten years); *Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 395, 398 (W.D. Tenn. 2012) (limiting discovery of certain information from past employers to approximately seven years). Some of the information to be disclosed by Permanente Dental Associates therefore will be restricted to Shea's final year of employment, i.e., 2013. Similarly, MTC has not established the relevance of all communication between Shea and his job counselor at the Oregon Employment Department. Therefore, MTC's motion will be granted only in part, and the permissible scope of the information requested is listed below for each of the three waivers and consents.

## IV.  Conclusion

Defendant's Opposed Motion to Compel Plaintiff's Authorization to Release Information Regarding Prior Employment (Dkt. 31) is **GRANTED IN PART**.

MTC's motion is **GRANTED IN PART** as to the "Waiver and Consent to Disclosure of Employment Related Information" to Permanente Dental Associates. Ex. 18, Dkt. 31-20. The information requested is limited to the following:

> a) job title;
> b) dates of employment;
> c) full time or part time status;
> d) hours worked **in 2013**;
> e) attendance/absences recorded **in 2013**;
> f) disciplinaries/ warnings/ write ups/ performance counselings;
> g) number of direct reports;
> h) ending salary/wages and paid benefits;
> i) essential job duties and skills required;
> j) eligibility for rehire if openings exist;
> k) number of shares/units/percentage ownership/and/or dollar value of shares owned/accrued in the company upon exit from employment;
> l) retirement/severance package earned/paid out upon exit from the company; and
> m) reason job ended.

MTC's motion is **GRANTED** as to the "Waiver and Consent to Disclosure of Employment Related Information" to Portland Community College in Ex. 19, Dkt. 31-21.

MTC's motion is **GRANTED IN PART** as to the "Waiver and Consent to Disclosure of Employment and Unemployment Related Information" to the Oregon Employment Department. Ex. 20, Dkt. 31-22. The information requested is limited to the following:

> a) complete application for unemployment benefits;
> b) copies of all decision(s) regarding benefits including any appeal documentation and decisions;
> c) all job search documentation recorded for Shea or completed by Shea;
> d) all changes of address documented by Shea; and

e) documentation from the Oregon Employment Department which designates the job search requirements which must be met by recipients of unemployment compensation.

All other relief not expressly granted herein is **DENIED.**

**SIGNED** on May 21, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE