UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DR. GRAHAM SHEA, DDS, *Plaintiff* | § § § |
| v. | § § Case No. 1:18-CV-00830-SH |
| MANAGEMENT AND TRAINING CORPORATION, *Defendant* | § § § § |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court held a bench trial in this case from August 30 through September 1, 2021. Plaintiff Dr. Graham Shea, DDS, appeared in person and through counsel, and Defendant Management and Training Corporation ("MTC") appeared through counsel. The parties submitted proposed findings of fact and conclusions of law on December 21, 2021. Having carefully considered the parties' briefs, exhibits, arguments of counsel, stipulations, applicable law, and entire record, the Court makes the following findings of fact and conclusions of law.[1]

## I. Jurisdiction

The Court has subject matter jurisdiction over this cause because Shea's claims arise under the laws of the United States, and he has exhausted all administrative remedies. *See* 28 U.S.C. § 1331.

## II. Background

MTC managed the Gary Job Corps Center ("GJCC") in San Marcos, Texas, pursuant to a $10.1 million contract with the U.S. Department of Labor. On July 18, 2016, MTC hired Shea as the dental director for the GJCC, which offered dental care to its approximately 1,300 students. Shea's employment was terminated on January 13, 2017.

---

[1] All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

1

On May 23, 2017, Shea filed a complaint with the Office of the Inspector General-Department of Labor ("OIG-DOL"). The Department of Labor issued an "Order Denying Relief" on June 21, 2018. Shea filed this *de novo* action on October 2, 2018, alleging that MTC retaliated against him for making protected disclosures by terminating his employment, in violation of the Federal Contractor Whistleblower Protection Act, 41 U.S.C. § 4712. He seeks compensatory damages, including back pay and front pay, as well as his costs, expenses, and attorney fees. Second Amended Complaint, Dkt. 19 ¶¶ 26-27.

### III. Legal Standards

Shea's claim arises under the National Defense Authorization Act of 2013 ("NDAA"), 41 U.S.C. § 4712, which "prohibits any recipient of federal dollars from retaliating against whistleblowers who report an abuse of that money." *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 353 (5th Cir. 2021); *see also Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 580 (5th Cir. 2020) (stating that "Section 4712 creates whistleblower rights"), *petition for cert. filed* (U.S. Mar. 1, 2021) (No. 20-1229). The statute was enacted as a pilot program in 2013 and made permanent in 2016. *Tex. Educ. Agency*, 992 F.3d at 354 n.1.

The NDAA "provides a private right of action to employees of federal contractors who are discharged or discriminated against in retaliation for disclosing information about regulatory violations to a federal entity responsible for overseeing the employer's federal contract." *Wright v. Common Ground Health Clinic, Inc.*, No. 16-11623, 2016 WL 4720011, at *3 (E.D. La. Sept. 9, 2016). "Generally, federal whistleblower protection statutes aim to uncover serious fraud against the government or critical health and safety violations by encouraging those with firsthand knowledge to come forward." *Kappouta v. Valiant Integrated Servs., LLC*, No. 20-CV-1501, 2021 WL 4806437, at *2 (S.D. Cal. Oct. 14, 2021).

Title 41 U.S.C. § 4712(a)(1) provides that:

> An employee of a contractor . . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing . . . information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

In his Second Amended Complaint, Shea alleges that he was discharged as a reprisal for disclosing violations and mismanagement of MTC's contract. Dkt. 19 ¶ 26. Accordingly, in order to prevail on the claim he has alleged, Shea must prove that (1) he was an employee of a government contractor, (2) he disclosed information that he reasonably believes "is evidence of gross mismanagement" of MTC's contract to manage the GJCC "or a violation of law, rule, or regulation" related to that contract, and (3) his disclosure was a contributing factor in his termination. *See Sargent v. Pompeo*, No. 1:19-cv-00620, 2020 WL 5505361, at *14 (D.D.C. Sept. 11, 2020); *see also Wondercheck v. Maxim Healthcare Servs., Inc.*, 495 F. Supp. 3d 472, 480-81 (W.D. Tex. 2020) (stating elements of *prima facie* case).

A "reasonable belief" "includes 'both a subjective and an objective component,' which means 'an employee must actually believe in the unlawfulness of the employer's actions and that belief must be objectively reasonable.'" *Craine v. Nat'l Sci. Found.*, 687 F. App'x 682, 691 (10th Cir. 2017) (quoting *Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dep't of Labor,* 717 F.3d 1121, 1132 (10th Cir. 2013) (construing whistleblower provision of Sarbanes-Oxley Act, 18 U.S.C. § 1514A(a)(1)))[2]; *cf. Wallace v. Andeavor Corp.*, 916 F.3d 423, 426-47 (5th Cir. 2019) (stating, in Sarbanes-Oxley Act case, that belief defendant committed covered violation must be objectively

---

[2] The NDAA "is a relatively newer statute with scant interpretive case law." *Busselman v. Battelle Mem'l Inst.*, No. 4:18-CV-05109-SMJ, 2019 WL 7763845, at *5 (E.D. Wash. Nov. 15, 2019).

3

and subjectively reasonable, and that the "objective standard examines whether the belief would be held by a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee") (internal quotation omitted).

An employee has the burden to demonstrate that the protected disclosure was a contributing factor in the adverse personnel action. *See* 41 U.S.C. § 4712(c)(6) (incorporating burdens of proof specified in 5 U.S.C § 1221(e)). The employee may demonstrate that the disclosure was a contributing factor to his termination through circumstantial evidence, such as evidence that "(A) the official taking the personnel action knew of the disclosure or protected activity; and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." *Armstrong v. Arcanum Grp., Inc.*, 897 F.3d 1283, 1287 (10th Cir. 2018) (quoting 5 U.S.C. § 1221(e)(1)).

## IV. Findings of Fact

The Court makes the following findings of fact relevant to disposition of Shea's claim.

### A. Absences and Evaluation

Shea was subject to MTC's 180-day employment probationary period policy, which would have ended on January 14, 2017. Shea was the only dentist on the GJCC staff and was scheduled to work eight hours a day, five days a week, Monday through Friday. On September 7, 2016, Shea received an evaluation indicating that his work met expectations. Plaintiff's Exhibit 11, Dkt. 74-1 at 124-25.

Shea's direct supervisor, Brenda Brooks, granted Shea a leave of absence for hernia surgery beginning October 10, 2016, with an expected return to work date of October 26, 2016. Shea returned to work that day, but did not work the next four days. During his 180-day probationary employment period, there were 42 days when Shea either did not work at all or worked less than

4

eight hours. Pursuant to MTC's employee handbook, employees were subject to termination for repeated excessive absenteeism.

### B. Alleged Disclosures

Shea offered evidence that he sent his MTC supervisors three emails with attached memoranda concerning equipment deficiencies at the dental clinic on August 1, September 2, and November 3, 2016. The latter was a proposal for dental equipment that included quotes for three different bitewing x-ray unit options priced from $3,239.25 to $13,430.00. While Shea testified that his primary concern was that the GJCC dental clinic lacked a required bitewing x-ray machine, his emails also addressed other equipment and maintenance issues, including outdated wiring and inoperable dental chairs. *See* Transcript Vol. I (Dkt. 82) 178:9-13. None of the messages referred to MTC's contract. Shea also alleged that he was prohibited from communicating with dentists at other Job Corps centers about GJCC's lack of a written referral plan for dental emergencies.

Brooks testified that there had been a bitewing x-ray machine for most of the ten years she worked at the GJCC and agreed the machine was necessary to perform dental treatments for GJCC students on site. The need for a bitewing x-ray machine was identified in the Department of Labor's 2013 assessment of the GJCC, the Regional Office Center Assessment ("ROCA"). After the 2013 assessment, on January 10, 2014, a panoramic x-ray machine marketed as capable of taking bitewing x-rays was acquired and installed at the GJCC dental clinic. Plaintiff's Exhibit 49, Dkt. 74-1 at 389-90. Brooks testified, however, that after the machine was installed, staff learned that it could not take bitewing x-rays without the purchase of additional, expensive software. Transcript Vol. II (Dkt. 83) 433:11-434:4. Brooks further testified that she requested funding to purchase the needed software long before Shea's arrival. *Id.* at 469:1-18.

### C. The 2017 ROCA Inspection

The GJCC was scheduled for another ROCA program compliance assessment for the Department of Labor on January 10, 2017, including an on-site visit by an inspector. Brooks gave Shea a compliance assessment questionnaire to complete before the ROCA inspector's visit; Shea completed most questions and asked Brooks to finish filling in the remaining data.

In the assessment, Shea listed the following problems with equipment at the dental clinic: no bitewing x-ray capability, dental chair issues, and "[f]aucets and sinks that either do not work well or drain at all." Defendant's Exhibit 39, Dkt. 73-1 at 413. Some of these issues had been identified in the equipment repair and service proposal Shea submitted on August 1, 2016, and remained pending. Because Brooks was out on medical leave, the August 1 proposal had been submitted to acting wellness administrator Sheryl Cheek, who agreed that the equipment upgrades and repairs were warranted. Plaintiff's Exhibit 12, Dkt. 74-1 at 126-29.

On December 28, 2016, Brooks asked Shea to explain the maintenance items he listed on the ROCA questionnaire, including repairs to faucets and sinks. Defendant's Exhibit 42, Dkt. 73-1 at 421. Brooks testified that until she received Shea's draft assessment in December 2016, no one had informed her of the equipment needing repair. She further testified that the dental clinic had twelve sinks and enough of them worked for the clinic to function fully.

In a December 29, 2016 email attaching a copy of Shea's draft questionnaire, Brooks notified GJCC Director Lonnie Hall that: "It is apparent we are going to have problems with dental during the [ROCA] assessment." Plaintiff's Exhibit 25, Dkt. 74-1 at 204. In response, Hall directed Brooks to have the sinks repaired and stated that they already should have been repaired. *Id.* Hall also explained, in the email and in his trial testimony, that the center could pay to repair equipment but could not use operational funds to purchase new equipment; rather, equipment purchases had

to be funded by the Department of Labor. *Id.*; Transcript Vol. III (Dkt. 84) 67:12-70:23, 74:11-75:5, 86:7-87:6.

Brooks made some changes to the ROCA questionnaire and returned it to Shea for his review before submitting it to the ROCA inspectors. Shea met privately with a ROCA inspector on January 10, 2017. During the onsite interview, Shea reviewed the issues he had raised in his responses to the questionnaire and let the ROCA inspector "know everything that was going on with the clinic." Vol. II (Dkt. 83) 307:4-23.

The inspectors issued a "Regional Consultant Trip Report" on January 20, 2017, with ratings and findings of the on-site ROCA inspection. Plaintiff's Exhibit 31, Dkt. 74-1 at 216-51. The GJCC Oral Health and Wellness Program was rated "satisfactory." *Id.* at 223. The Report stated that "[a]ll basic services, with the exception of bitewing x-rays and anterior root canal therapy, are provided," and also noted that agreements were in place for oral health referrals and emergencies. *Id.* The Report concluded that:

> PRH [the Job Corps "Policy and Requirements Handbook"] requirements are met, with the exception of bitewing x-rays and anterior root canal therapy. The center should work with the regional oral health specialist to evaluate the equipment needed so that the equipment purchased will allow the center to provide the required services to students.

*Id.* at 224. Absence of the bitewing x-rays was identified as a "repeat weakness." *Id.* at 249. MTC responded that it hoped to have the equipment in place by June 30, 2017. *Id.*

### D. Termination

Shea missed work on January 5, 2017, nine days before his probationary employment period was scheduled to end. Brooks issued a "Documented Verbal Warning," which Shea signed when he returned to work on January 6, 2017. The warning states in full:

7

> Over the past six months, between July and December 2016, I have noticed a pattern developing in the number of absences and requests to leave early from your assigned shift.
>
> We spoke about the hardship placed on the department on the morning of 11/1/16, and you said you understood but had no control over recovery time, yet this continues to be a continuous pattern. Working when assigned is imperative to the successful operation of the dental department and the provision of dental care to the students.
>
> Effective immediately, you are expected to report to work when assigned and complete your entire shift.
>
> Failure to adhere to these directives may result in further disciplinary action up to and including suspension or termination of employment.

Plaintiff's Exhibit 28, Dkt. 74-1 at 212. Brooks testified that, "at this point, I was thinking it is nearing the end of [Shea's] probationary period, he's not coming to work, here's another day that he's missing that we're having to rearrange the schedule." Vol. II (Dkt. 83) 452:5-8.

Brooks testified that she decided to terminate Shea after she issued the warning, on January 9, 2017, five days before his probationary period expired. Brooks prepared a "Request to Terminate Graham Shea, Dentist, during New Hire Probationary Period," which was signed by the GJCC's acting director the same day. The request states in full:

> Graham Shea was hired as the center dentist on July 18, 2016. His new hire probation period will end on January 14, 2017. Dr. Shea has struggled in several areas. I have concerns and do not recommend retention.
>
> Dr. Shea has been counseled on his excessive absenteeism on at least two occasions and was given a documented verbal warning on January 6, 2017. He has incurred absences every month beginning August thru December, 2016, which have resulted in over twenty days of absences since his employment.
>
> His absenteeism has created a hardship to the dental program, the students and the dental team. The dental department is behind on providing dental exams for students who requested them due to Dr. Shea not coming in regularly. Students are given appointments then disappointed when told the dentist is not in and they will have to be rescheduled. The dental hygienist and dental assistant have

8

> both expressed unsolicited frustration and concern for the department because Dr. Shea calls in so much.
>
> Dr. Shea has had a hard time adjusting to center procedures, in part, due to excessive absenteeism. He was counseled on proper professional etiquette with regard to Job Corps on at least two occasions. His reaction to this counseling was to become indignant and frustrated and proceed as he wanted, and continued to write inappropriate, e-mails to staff concerning his ideas.
>
> He does not seem to be happy in his current position as evidenced by his negative behavior toward the center norms and his excessive call-ins. Out of the 25 weeks he has been employed at Job Corps, he worked only 9, 40-hour weeks and two of them were during winter break when there were no students to be seen.
>
> There have been no noted improvements in Dr. Shea's behavior which was displayed to the human resources trainer as recently as January 3, 2017, when trying to challenge MTC's tobacco-free policy. His absenteeism continues as recently as January 5, 2017. I recommend not retaining Dr. Shea. There have been too many issues in the past few months for me to feel this is a good fit for either party. As a staff member, he does not role model appropriate behavior to our students. He does not seem to have the work ethic I am looking for in the staff in this department.

Plaintiff's Exhibit 29, Dkt. 74-1 at 213.

### E.  Post-Termination Complaints

After he was fired, Shea filed a complaint with the Texas Board of Dental Examiners, which was denied. Shea also filed his whistleblower retaliation complaint with the DOL-OIG, which conducted an investigation. In its report dated May 31, 2018, the DOL-OIG found that Shea "made several disclosures that would qualify as protected disclosures under the statute." Plaintiff's Exhibit 43, Dkt. 74-1 at 279 (citing 41 U.S.C. § 4721(a)(2)(D)). The report further stated that:

> Shea told the OIG that early in his employment, he verbally discussed equipment and safety deficiencies at the Dental Clinic with Brenda Brooks, Wellness Administrator and his direct supervisor. Shea explained that he had notified Brooks about several deficiencies, but of particular concern to him was that the dental clinic did not have a bitewing x-ray machine.

9

*Id.* at 278. The report states that "Brooks said that she was fully aware of the deficiencies listed in Shea's pre-inspection report including the need for GJCC to have a bitewing x-ray machine at the dental clinic." *Id.* at 280. The DOL-OIG found that "the temporal proximity between the ROCA inspection and Shea's termination ***arguably provides the circumstantial evidence*** that the disclosure could have been a contributing factor in Shea's termination." *Id.* (emphasis added).

In the subsequent Order Denying Relief, the Department of Labor found that, "while the complainant has established that his protected activity was a contributing factor in the adverse actions detailed in the complaint, the complainant's employer established by clear and convincing evidence that it would have taken the same action in the absence of the protected activity." Defendant's Exhibit 20, Dkt. 73-1 at 319.

## V. Conclusions of Law

Shea was an employee of MTC, a government contractor, satisfying the first element of the alleged violation of Section 4712. MTC challenges the second and third elements. First, MTC contends that Shea failed to meet his burden to prove by a preponderance of the evidence that he made any disclosures protected under Section 4712. MTC also contends that Shea failed to demonstrate that his disclosure was a contributing factor in his termination.

On *de novo* review, the Court agrees that Shea failed at trial to satisfy the second and third elements of a Section 4712 violation. The Court addresses each in turn.

### A. Shea Did Not Disclose Any Information He Could Reasonably Believe to be Evidence of Gross Mismanagement of MTC's Contract

MTC had a $10.1 million contract with the Department of Labor to manage the GJCC, which had some 1,300 students and 500 employees. Plaintiff's Exhibit 31, Dkt. 74-1 at 219; Plaintiff's Exhibit 47, Dkt. 74-1 at 309, 320; Vol. III (Dkt. 84) 65:7-9. After Shea made his alleged disclosures in a private meeting with the on-site inspector conducting an assessment for the

Department of Labor, the inspector found that the dental clinic met PRH requirements except for bitewing x-rays and anterior root canal therapy.

The Department of Labor identified the need for a functioning bitewing x-ray machine at the GJCC dental clinic three years before MTC hired Shea. Procurement of a new machine required funding from the Department of Labor, which recommended its purchase in the 2013 and 2017 ROCA reports but nonetheless rated the GJCC clinic "satisfactory." Brooks agreed that the clinic needed a bitewing x-ray machine and testified that identifying this weakness in the 2017 ROCA Report might help get funding from the Department of Labor. Vol. II (Dkt. 83) at 398:4-7, 433:11-434:4, 450:3-14. Thus, trial testimony from Shea's supervisor showed that she believed Shea's alleged disclosures actually could be helpful to MTC.

Shea submitted evidence that a bitewing x-ray machine would cost from $3,239.25 to $13,430.00, should the Department of Labor choose to provide funding for it. No objectively reasonable person would consider the lack a bitewing x-ray machine to qualify as "gross mismanagement" of MTC's $10.1 million contract to manage the GJCC under 41 U.S.C § 4712. Nor could the remaining referral or maintenance issues Shea identified, such as malfunctioning sinks and dental chairs, arise to the magnitude of gross mismanagement of MTC's contract.

Shea does not clearly allege what "violation of law, rule, or regulation related to a Federal contract" he believes he disclosed, but to the extent he contends that the lack of bitewing x-ray capability violated the PRH, he did not disclose that information to the Department of Labor; the department had been aware of its absence for at least three years before Shea was hired. *See* Dkt. 19 ¶ 26 (alleging that ROCA pre-assessment questionnaire "contained protected disclosures of contract violations and violations of the PRH guidelines"). Neither Shea nor the 2017 ROCA inspection identified any violation of law, rule, or regulation related to MTC's federal contract.

The Court finds that Shea did not prove at trial that he disclosed information he could reasonably believe to constitute violations and gross mismanagement of MTC's contract to manage the GJCC. Thus, he has not met the second element of a claim under Section 4712.

**B.  Shea's Disclosure Was Not a Contributing Factor in His Termination**

Even had Shea satisfied the second element of his claim, he did not establish that any of his disclosures was a contributing factor in his termination. A contributing factor is "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Wondercheck*, 495 F. Supp. 3d at 484 (quoting *Cejka v. Vectrus Sys. Corp.*, 292 F. Supp. 3d 1175, 1194 (D. Colo. 2018)).

Stated simply, clear and convincing evidence established at trial that Shea was fired because he did not show up for work. MTC offered uncontroverted evidence that Brooks requested and received permission to fire Shea on January 9, 2017, the day before he met with the ROCA inspector. In fact, Brooks, who retired later in 2017, testified credibly that she considered ***not firing*** Shea based on his work completing the ROCA questionnaire before the inspector's on-site visit:

> Q. Was the fact that Dr. Shea filled out a ROCA questionnaire, did that weigh in any form, any -- any part at all, one percent in your mind, for recommending his termination?
>
> A. Not at all. In fact, it would have, and did, make me consider him staying because he did a good job on -- on the report.
>
> Q. Why, then, to your knowledge and best of your memory . . . what is your best memory as to why you terminated -- recommended termination of Dr. Shea?
>
> A. Because he didn't show up. He neglected the department. He didn't see the students on a regular basis, he called in so often that we had to rearrange the schedule for his students. I -- I made the decision because of his not coming to work.

Vol. II (Dkt. 83) 459:19-460:9.

Furthermore, because Brooks requested and received permission to fire Shea on January 9, 2017, it would not be reasonable to conclude that any disclosure Shea made during his meeting with the ROCA inspector the next day was a contributing factor in his termination under 5 U.S.C § 1221(e)). Far more compelling are the uncontroverted facts that (1) Shea missed 42 days of work in his first six months on the job, and (2) his 180-day probationary employment period was set to end on January 14, 2017, the day after he was fired. The Court finds Shea has not shown that any information he disclosed was a contributing factor in his termination.

## VI. Conclusion

For the foregoing reasons, the Court concludes that Plaintiff Dr. Graham Shea, DDS, did not prove that Defendant Management and Training Corporation retaliated against him for violating 41 U.S.C. § 4712. The Court will enter a final judgment in a separate order.

**SIGNED** on January 18, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE